**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRIGHTON COLLECTIBLES, INC., <br><br> Plaintiff, <br> vs. <br><br> RK TEXAS LEATHER MFG.; K & L IMPORTS, INC.; et al., <br><br> Defendants, <br><br> and related cross claims. | CASE NO. 10-CV-419-GPC (WVG) <br><br> ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ON COPYRIGHT INFRINGEMENT, STATUTE OF LIMITATIONS, & LACHES <br><br> [Doc. Nos. 136, 170, & 174] |

Having carefully considered the briefs and exhibits, the Court finds that Plaintiff's copyright infringement claim and Defendants' statute of limitations and laches defenses involve disputed questions of fact that cannot be resolved by summary judgment, and therefore denies those motions.

By separate order, the Court scheduled oral argument on the remaining motions on December 20, 2012. Local Civil Rule 7.1.d. Upon the resolution of those motions, the case will be ready for trial. Accordingly, the Court requests the Magistrate Judge to issue an amended scheduling order.

### **Background**

Plaintiff Brighton Collectibles, Inc. ("Brighton") manufacturers and sells women's fashion accessories, including handbags. Brighton registered copyrights on several of its designs, in particular, Brighton "adorns" its handbags with a "hollow, sculpted, silver

1  heart." Kohl Decl. ¶ 13.  This action concerns 23 designs in Brighton's Western
2  Collection.
3      Brighton filed this action in February 2010 against RK Texas Leather
4  Manufacturing, Inc., and subsequently added Richard Ohr, K & L Import, Inc., NHW, Inc.,
5  YK Trading, Inc., JC NY, Joy Max Trading Inc., and AIF Corporation (collectively,
6  "Defendants"), alleging violations of Brighton's intellectual property rights.  RK Texas and
7  Ohr filed cross claims for indemnification against the other defendants.
8      Defendants now challenge whether fourteen of Brighton's products can survive
9  summary judgment due to alleged flaws in the registrations; an absence of originality,
10 particularly since the designs are allegedly "derivative" of prior works; and a lack of
11 similarilty.  Defendants further contend that Plaintiff's claims are barred by the statute of
12 limitations and the equitable doctrine of laches.
13                              **Discussion**
14 **I.  Summary Judgment Standard**
15     Summary judgment is appropriate when the "pleadings, depositions, answers to
16 interrogatories, and admissions on file, together with the affidavits, if any, show that there
17 is no genuine issue as to any material fact and that the moving party is entitled to judgment
18 as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
19 (1986).  As the moving party, Defendants bear an initial burden of proving the absence of
20 a disputed issue of fact; however, because Brighton bears the burden of proving
21 infringement, it must come forward with "specific facts showing that there is a genuine
22 issue for trial" in order to defeat the summary judgment motion. *Matsushita Elec. Indus.*
23 *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Celotex*, 477 U.S. at 325.  The Court
24 must construe the evidence and draw justifiable inferences in favor of the non-moving
25 party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).
26 **II.  Copyright Infringement**
27     To prevail on a copyright infringement claim, Brighton "must demonstrate '(1)
28 ownership of a valid copyright, and (2) copying of constituent elements of the work that are

original.'" *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010) (quoting *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

### A. Four Designs Not Registered Within Five Years of Publication

Brighton submitted certificates of registration for each of its claimed designs. Under the copyright laws, the registration of a copyright certificate constitutes "prima facie evidence of the validity of a copyright in a judicial proceeding commenced within five years of the copyright's first publication. 17 U.S.C. § 410(c)." *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997). "The presumption is rebuttable, and does not definitively resolve the ownership issue." *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1096 (N.D. Cal. 2002).

Defendants argue that four of the certificates are not prima facie evidence of authorship and copyrightability because the Callie, Charmaine, Melanie, and Heart Conch designs do not satisfy the five-year requirement. Rice Decl., Exs. A (Callie registered in 2000 and published in 2007), D (Charmaine published in 1998 and registered in 2011), & E (Melanie published in 1998 and registered in 2007); Kuo Decl., Ex. B (Heart Conch published in 1991 and registered in 1997).

At this stage of the proceedings, Defendants have not come forward with any evidence, they simply rely on the passage of time to question whether Brighton is entitled to rely on the presumption. *Entm't Research*, 122 F.3d at 1217-18; *Napster*, 191 F. Supp. 2d at 1095-96 (defendants questioned whether plaintiff owned rights to music works identified in complaint); *Broadcast Music, Inc. v. Rockingham Venture, Inc.*, 909 F. Supp. 38, 43 & n.4 (D.N.H. 1995). The Copyright Act allows the district court the discretion to determine the evidentiary weight accorded to a certificate when the only flaw is the passage of time. 17 U.S.C. § 410(c). Most courts conclude that untimely certificates constitute prima facie evidence. *E.g., Graphic Design Mktg., Inc. v. Xtreme Enters., Inc.*, 772 F. Supp. 2d 1029, 1032-33 (E.D. Wis. 2011); *Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 275 F. Supp. 2d 506, 514 (S.D.N.Y. 2003); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1242 (N.D. Cal. 1995).

Here, however, Defendants challenge whether Brighton's designs are original. They argue the designs merely repeat common, generic elements from the public domain. Because the Copyright Office does not evaluate the originality of a design before issuing a certificate, courts have shifted the burden to the plaintiff when the certificates fall outside the five-year window. *Metal Morphosis, Inc. v. Acorn Media Publ'g, Inc.*, 639 F. Supp. 2d 1367, 1374 (N.D. Ga. 2009).

"Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 346 (citation omitted). "To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as the possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id.* at 345 (citation omitted). "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id.* at 345-36.

As discussed in more detail below, the Court finds that Brighton's designs satisfy the threshold standard of originality. *LA Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 848-51 (9th Cir. 2012), *amended* 2012 U.S. App. LEXIS 12033 (June 13, 2012); *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (originality "means little more than a prohibition of actual copying") (citation and quotation marks omitted). Here, Brighton made independent choices of selection and arrangement with at least a minimal degree of creativity. Wesley Decl., Exs. 44, 45, 53, 54, 59, & 64; Kuo Decl. Ex. A; *Feist*, 499 U.S. at 348. The designers testified they used their own imaginations to compose familiar design elements in creative ways. *E.g.*, Rice Decl., Ex. I (Clancy Depo. at 17-21, 44-46, 55, & 110-11) (Charmaine). Defendant's expert witness did not find any hearts that were exactly the same as the ones designed by Brighton. Wesley Decl, Ex. 119 (Zapata Depo. at 22); *see* Rice Decl., Ex. R (photographs).

In sum, the Court finds that the time delay between publication and registration does

not rebut the presumption that the Callie, Charmaine, Melanie, and Heart Conch designs are copyrightable as evidenced by the certificates.

### B. The Charmaine Heart and Carolina Designs

Defendants also argue the Charmaine Heart and Carolina designs lack sufficient originality to warrant copyright protection. Specifically, Defendants contend these two designs are "derivative" works of preexisting works.

A derivative work is "based upon one or more preexisting works, such as [an] . . . art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. "A work consisting of . . . elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.'" *Id.* A derivative work is afforded less protection than an original work. "The copyright in . . . a derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." *Id.* § 103(b).

The Ninth Circuit applies a two-prong test for the copyrightability of a derivative work:

> First, to support a copyright the original aspects of a derivative work must be more than trivial. Second, the original aspects of a derivative work must reflect the degree to which it relies on preexisting material and must not in any way affect the scope of any copyright protection in that preexisting material.

*Entm't Research*, 122 F.3d at 1218-19 (citation omitted).

For example, Alfred Hitchcock's movie "Rear Window" is a derivative work of the preexisting work of Cornell Woolrich's story "It Had to be Murder." *Abend v. MCA, Inc.*, 863 F.2d 1465 (9th Cir. 1988). In that example, both works were copyrightable because Hitchcock's film version contributed significant original, creative elements to distinguish it from the author's original storyline. *Id.* at 1479, 1481; *id.* at 1486-87 ("Creative contributions by the defendants to the movie 'Rear Window' abound. . . . In short, the film is a new work of art.") (Thompson, J., concurring).

Defendants argue that the derivative nature of the challenged designs has three

consequences that entitle them to summary judgment. First, Defendants argue that Brighton's failure to register each design as a derivative work deprives Brighton of the presumption that it holds a valid copyright. Second, Defendants argue that Brighton's additions to the preexisting work were trivial and thus do not warrant independent copyright protection. Third, Defendants contend that Brighton's copyright protects only the minor changes that were contributed to the derivative work.

### 1. Alleged Error in Registration Form

Defendants argue Brighton erred when it registered the Charmaine Heart and Carolina designs because it did not disclose that they were derivative designs. Reply Br. at 3-4 & n.7 (citing treatise); Rice Decl., Exs. B & D; *Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155, 1163-64 (C.D. Cal. 2010) (when a copyright is sought on a derivative work, the registration form must identify the preexisting work).

Defendants concede that the case law "overwhelmingly" provides that inadvertent and immaterial mistakes on certificates do not invalidate a copyright. *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997); *accord LA Printex*, 676 F.3d at 852-53; *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 & n.5 (9th Cir. 1984) ("Absent intent to defraud and prejudice, inaccuracies in copyright registration do not bar actions for infringement."). Yet Defendants argue that failing to describe these two designs as derivatives was a material omission because the Copyright Office may have rejected the applications if it found that the changes were trivial. 17 U.S.C. § 411(b)(1); *see Urantia*, 114 F.3d at 963 (a material error is one that might have caused the Copyright Office to reject the application). Defendants argue that Brighton's omission means that it is not entitled to the presumption of validity that ordinarily flows from a certificate of registration. 17 U.S.C. § 410(c); *Torres-Negron v. J & N Records, LLC*, 504 F.3d 151, 158 (1st Cir. 2007); *Masquerade Novelty v. Unique Indus.*, 912 F.2d 663, 668 n.5 (3d Cir. 1990); *e.g.*, *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F. Supp. 980, 987-88 (D.C.N.Y. 1980).

### (a) Charmaine Heart

Defendants contend that the Charmaine Heart is derivative of Brighton's Barror Heart, which was itself based on another company's copyrighted work – James Avery Craftsman, Inc.'s Heart of Gold Pendant Design. Rice Decl., Ex. P.

As support for their theory, Defendants first contend that the designer for Brighton "admitted" he copied the Charmaine design from James Avery's work.

The record does not support this characterization of the evidence. Thomas Clancy, the designer, testified in his deposition that he designed the Charmaine heart based upon a preliminary sketch that his supervisor, Beth Barror, gave him with instructions to alter it. Rice Decl., Ex. I (Depo. at 17-21, 44-46, 55). Clancy testified that he did *not* use the James Avery Heart as "inspiration." *Id.* (Depo. at 40).

Second, Defendants rely on the circumstances surrounding Brighton's 1998 design. They note that a few months before Brighton registered the Charmaine heart, James Avery sent a "cease and desist" letter alleging that Brighton's Golden Heart Collection infringed its Heart of Gold Pendant. Rice Decl., Ex. P. Defendants infer from the timing that Brighton then modified its Barror Heart into the Charmaine Heart so that it would no longer infringe the James Avery copyright.

While Defendants ask the Court to infer from the similarities of the designs and the sequence of events that copying occurred, that is a question of fact for the jury. *N. Coast Indus.*, 972 F.2d at 1034-35. At the summary judgment stage, the Court must draw inferences in favor of Brighton. *Anderson*, 477 U.S. at 255.

More importantly for purposes of this summary judgment motion, Defendants have not presented evidence to show that Brighton's alleged error in failing to register the Charmaine Heart as a derivative work was either intentional or material. *Dynamic Solutions, Inc. v. Planning & Control, Inc.*, 646 F. Supp. 1329, 1341-42 (S.D.N.Y. 1986) (no reason to believe that minor error was an attempt to deceive or that Copyright Office might have rejected the application); *see Thorton v. J Jargon Co.*, 580 F. Supp. 2d 1261 (M.D. Fla. 2008) (evidence of scienter required).

Brighton articulated its reasons for believing that the Charmaine Heart is not a derivative work, and in any event, its understanding that it was not required to disclose the information since it also created the preexisting work (the Barror Heart). Brighton relies on a line of cases that holds "[w]here the same creator owns both the original and derivative copyrights, the only sound interpretation of the Copyright Act is that the derivative work carries forward all preexisting copyrights in the original work." *Richmond Homes Mgmt., Inc. v. Raintree, Inc.*, 862 F. Supp. 1517, 1525 (W.D. Va. 1994) (citing *Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 904 (11th Cir. 1986); *Rexnord, Inc. v. Modern Handling Sys., Inc.*, 379 F. Supp. 1190, 1198 (D. Del. 1974)), *rev'd in part on other grounds*, 66 F.3d 316 (4th Cir. 1995). This rule protects the owner of an original work who makes modifications in a subsequent work. *Id.*; *accord Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 538 (4th Cir. 2007) ("That provision assures that the author of a derivative work does not acquire ownership over constituent material that is already in the public domain or owned by someone else. But when the author of the derivative work *also* has a copyright on the underlying work, there is no need to protect the public domain or the author of the underlying work, as the entire work is that of the single author."); *see also U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016 (9th Cir. 2012) ("A copyright owner has the exclusive right to 'prepare' and authorize preparation of 'derivative works based upon the copyrighted work.'"); 17 U.S.C. § 106(2).

Brighton presented evidence that the Charmaine Heart copyright was based on Brighton's *own* design work.[1] Rice Decl., Ex. I (Clancy Depo. at 17-21, 44-46, 55, & 110-11) (Charmaine Heart based on Brighton's "Barror" Heart).[2] Because the case law supports Brighton's position that the owner of copyrighted derivative work need not disclose its own preexisting work, the Court denies Defendants' motion. *Cannon Grp., Inc.*

---

[1] The Court does not rely on Jerry Kohl's declaration, therefore, the Court need not decide Defendants' motion to strike the statements that purportedly contradict the testimony of the designers. Reply Br. at 2.

[2] The Court is persuaded by Judge Huff's analysis in a related case. Wesley Decl., Ex. 83 (*Brighton Collectibles, Inc. v. Dynasty Designs, LLC*, Case No. 06-CV-1588-H, March 16, 2009 Order Denying Def.'s Mot. Summary Judgment at 3-5).

1  *v. Better Bags, Inc.*, 250 F. Supp. 2d 893, 898-99 (S.D. Ohio 2003); *Computer Assocs. Int'l,*
2  *Inc. v. Altari, Inc.*, 775 F. Supp. 544 (E.D.N.Y 1991), *rev'd in part on other grounds*, 982
3  F.2d 693 (2d Cir. 1992); *cf. Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 275 F.
4  Supp. 2d 543, 555-56 (D.N.J. 2003) (owner of film did not need to register advertising
5  trailers consisting entirely of material taken from registered film).

### (b) Carolina Design

Defendants argue the Carolina Design is derivative of an earlier Brighton design, the Caroline watch, and should have been registered as such.

As with the Charmaine Heart, the evidence shows that Brighton created and owns both the preexisting and allegedly derivative work. Wesley Decl., Ex. 102 (Barror Depo. at 32-34, 129-30) (Beth Barror designed the Carolina Heart). The Court finds that Defendants are not entitled to summary judgment because there is no evidence that alleged failure to identify the design as a derivative on the registration form was either intentional or material.

### 2. Copyrightability of the Allegedly-Derivative Designs

Next, assuming that the Charmaine Heart and Carolina designs were derivative of preexisting works, Defendants argue that the changes were merely trivial and therefore these works are not copyrightable.

### (a) Charmaine Heart

Defendants contend that the Charmaine Heart lacks any element of originality as distinct from the preexisting works of either the Barror Heart or James Avery's design. A visual comparison shows some similarities between the three designs, but does not establish as a matter of law that Brighton's design lacks sufficient originality to warrant its own copyright. "The work offered for registration need not be new, but only original, *i.e.*, the product of the registrant." *N. Coast Indus.*, 972 F.2d at 1033. The testimony by Brighton's designer describes the original elements he contributed, and thereby raises a question of fact for the jury. Rice Decl., Ex. I (Clancy Depo. at 17-21, 44-46, 55, & 110-11).

**(b) Carolina Design**

Similarly, Defendants argue that the modest changes to the Carolina Heart are too trivial to warrant copyright protection as distinct from the earlier Caroline design. Brighton's designer described the original elements she added, particularly in the selection of the arrangement and composition of the elements, Wesley Decl., Ex. 102 (Barror Depo. at 32-34, 129-30), which could persuade a reasonable jury that the design warrants copyright protection, *N. Coast Indus.*, 972 F.2d at 1034-35 (similarity, including whether changes were trivial, is usually a question of fact for jury).

### 3. Extent of Copyright Protection on a Derivative Work

Defendants argue that a third and final consequence flows from the derivative nature of the Charmaine and Carolina designs – they enjoy limited copyright protection. By statute, protection for a derivative work "extends only to the material contributed" by the new work but does not include the elements carried forward from the preexisting work. 17 U.S.C. § 103(b); *Russell v. Price*, 612 F.2d 1123, 1128 (9th Cir. 1979). Defendants contend that Brighton can only sue for the infringement of the elements that it added to the Charmaine Heart and Carolina designs, but not for any elements that it copied from the preexisting Barror Heart, James Avery Heart, and Caroline designs.

The Court is persuaded by the cases cited by Brighton that an exception to § 103(b) exists when the same designer owns both the preexisting and derivative works. *Christopher Phelps*, 492 F.3d at 538 ("when the author of the derivative work *also* has a copyright on the underlying work, there is no need to protect the public domain or the author of the underlying work, as the entire work is that of the single author"); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1447-48 (9th Cir. 1994) (rejecting restrictive reading of § 103(b) when plaintiff owned copyrights on underlying and derivative works); *Richmond Homes*, 862 F. Supp. at 1525 (same designer can fully protect all original elements of his own preexisting and derivative works); *see Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739 (2d Cir. 1988) (copyright on an updated derivative map permitted owner of the preexisting work to sue defendant for infringing all elements).

### C. Scope of Protection from Copying

The Copyright Act protects a plaintiff from competing works that are "substantially similar." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913-14 (9th Cir. 2010). This standard applies when there is a wide range of expression available. *Id.* at 916. For example, there are countless ways to design a doll. If, however, there is only a narrow range of expression available, then plaintiff's copyright protection is "thin" and the defendant's work must be "virtually identical" to infringe. *Id.* at 913. A painting of a bouncing red ball on a blank canvas would carry only a thin copyright because there are only a limited number of ways in which to express that idea. *Id.* at 914.

In addition, because copyright protection does not extend to "standard, stock, or common" elements, those generic elements must be excluded from the comparison. *Satava v. Lowry*, 323 F.3d 805, 810-11 (9th Cir. 2003). For example, a designer cannot claim for itself the right to all brightly colored jelly fish designs because many jelly fish are brightly colored. *Id.*; *e.g.*, *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000) (boldly-colored blue glass vodka bottle shaped like a wine bottle has "thin" protection). The rule prevents one artist from claiming too large of a monopoly on unoriginal, common elements that the public should be allowed to use in fair competition. *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 741-42 (9th Cir. 1971).

Nonetheless, a designer who contributes original touches is entitled to protect those elements. For example, a jelly fish designer may copyright his work to the extent he adds a distinctive curl to particular tendrils or arranges certain hues in his original design. *Satava*, 323 F.3d at 810-11. Moreover, the Copyright Act will protect a designer who creatively selects and arranges a sufficient number of unprotectable elements into a new and original combination. *Id.* Recently, the Ninth Circuit applied that exception to a floral fabric design and concluded that the plaintiff's original selection, arrangement, and composition of leaves, stems, flowers, and buds was copyrightable. *LA Printex*, 676 F.3d at 848-51 (summary judgment not appropriate because jury must compare similarity of two designs).

Defendants argue that none of Brighton's heart designs are original because they all

use hearts, scrolls, roping, and flowers that are common elements in women's fashion accessories. *E.g.*, Rice Decl., Ex. L (Barror Depo. at 23-24, 130, 137-38). Brighton's designers used reference materials as inspiration for the "classic" design elements from the "romantic Victorian" period. *E.g.*, Rice Decl., Ex. I (Clancy Depo. at 139-41). Defendants' expert witness, Janet Zapata, gave her opinion that "the heart is a universal image having been part of civilization since the last Ice Age, about 12,000 years ago." Rice Decl., Ex. R (Report at 13). Zapata reports that other elements such as the fleur-de-lis lily, rope twists, dots, angels, scrolls, and flowers have been ubiquitous motifs in jewelry for centuries. *Id.* (Report at 6-13).

The Court agrees with Brighton that this case is similar to the floral fabric design in *LA Printex* because "there are gazillions of ways to combine" flowers, ropes, and scrolls in heart designs. 616 F.3d at 850-51 (quotations omitted). As Brighton points out, the heart shape itself is simply a frame, like a rectangle, that a particular artist can fill with his or her own unique, original contributions. A visual inspection of Brighton's copyrighted designs reveals unique combinations, arrangements, and compositions of elements, thus, even though hearts, flowers, ropes, and scrolls are familiar shapes, Brighton's particular expressions of those elements are sufficiently creative to preclude entry of summary judgment. *LA Printex*, 676 F.3d at 848-51; *accord N. Coast Indus.*, 972 F.2d at 1035 (summary judgment inappropriate on plaintiff's arrangement of geometric shapes). Consequently, the Court rejects Defendants' argument that Brighton's heart designs are entitled to only "thin" copyright protection.[3]

### D. Copyright Infringement is a Question of Fact for the Jury

Defendants next move for summary judgment on the ground that they did not, as a matter of law, copy Brighton's designs. Rather, Defendants argue that an analytical dissection of the original elements shows that Defendants' own works do not infringe as a

---

[3]The Court is persuaded by Judge Huff's analysis in a related case, where a jury found in Brighton's favor. Ex. 85 (*Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*, Case No. 06-CV-1848-H, Sept. 7, 2012 Order Denying Def.'s Mot. for Judgment as Matter of Law at 10-13).

1 matter of law.[4]

2     Although Defendants separately analyze fourteen designs, the Court discusses its
3 comparison of only one design. The Court selected the Melanie design because it is the
4 least similar to the Defendants' design but illustrates that a jury must decide the
5 infringement issue. The Court evaluated the other thirteen designs and adopts the analysis
6 set forth in Brighton's opposition briefs that summary judgment is not appropriate.

7     Substantial similarity is a fact-specific inquiry, but it "'may often be decided as a
8 matter of law.'" *Benay*, 607 F.3d at 624. Though the Ninth Circuit employs an
9 objective/extrinsic and a subjective/intrinsic test, on summary judgment the only issue is
10 whether the Defendants' accused designs are substantially similar under the objective test.
11 *Id.*; *LA Printex*, 676 F.3d at 848-49 ("Where reasonable minds could differ on the issue of
12 substantial similarity, . . . summary judgment is improper.") (quotation omitted).

13     Brighton's Melanie design is a heart shouldered by two scrolls. Wesley Decl., Ex.
14 64; Rice Decl, Ex. O at 195 (JT-2526). Inside the heart is a fleur-de-lis design. *See* Rice
15 Decl, Ex. R (Expert Report at 7). The heart itself is "puffy" and has a border. *Id.* Each
16 scroll is shaped like "a spiral or convoluted curve." *Id.* (Report at 8).

17     Defendants have two versions. Both versions have a heart with scrolls on each side.
18 Defendants argue, however, that the similarities end with those common elements. They
19 argue that their own scrolls are shaped differently because they are flatter and curl less at
20 the tips. As for the design inside the heart-shape, Defendant Joymax notes that its version
21 has a frame filled with scrolls but the heart on the Melanie design has a "completely

---

[4] Defendant Joymax briefed the five designs that it is accused of having infringed (Callie, Carolina, Celtic Heart, Charmaine Heart, and Melanie), while Defendant YK Trading adds two additional designs (Heart Conch and Cherub Flap). Defendant AIF Corporation filed its own motion on several watch designs (Ventura, Victoria, Camden, Dublin, Santa Barbara, and Fairfax) as well as repeating the challenge to the Carolina design.
    Defendants assumed that Brighton was entitled to only "thin" protection on certain of the designs and thus used the "virtually identical" test of similarity. As the Court has rejected that argument, it applies the substantially similar test. Nonetheless, the Court's ruling on those designs would be the same under either test. *Lucky Break Wishbone Corp. v. Sears, Roebuck & Co.*, 528 F. Supp. 2d 1106, 1124-25 (W.D. Wash. 2007) (denying summary judgment on issue of whether defendant's design was "virtually identical" to copyrighted work because questions of fact for jury remain).

1 different" fleur-de-lis swirl at the top.  Mot. at 24.  By contrast, the second version prepared
2 by the other defendants, has a fleur-de-lis flower inside the heart.  Wesley Decl., Ex. 63.

3       The Court concludes that a reasonable factfinder could conclude that both versions
4 are substantially similar to the copyrighted design.  Despite the apparent difference in the
5 content of the heart in Defendant Joymax's version, the record shows that that heart is
6 similar to Brighton's Charmaine Heart.  Wesley Decl., Ex. 64.  A jury could find that
7 Defendant Joymax replaced the heart in the Melanie Design with another infringing heart
8 design from Brighton's collection.  By contrast, the second style of heart (apparently
9 distributed by the other defendants) shares a similar fleur-de-lis design with Brighton's
10 Melanie Heart.  A defendant may infringe a copyright by copying a relatively small portion
11 of the entire work, if the portion is qualitatively important and there is substantial
12 similarity.  *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987).

13       In any event, both versions of the Defendants' allegedly infringing designs are
14 sufficiently similar to Brighton's copyrighted Melanie Design in terms of the overall design
15 and placement of the elements so as to survive summary judgment.  The minor differences,
16 such as the depth of the bevels, appear to be a result of the poor quality material or inferior
17 workmanship.  *LA Printex*, 676 F.3d at 851 (fact question existed when reasonable jury
18 could conclude minor differences were due to defendants "cruder, lower-quality"
19 manufacturing techniques).

20       In sum, a reasonable jury could visually compare the competing designs and find in
21 favor of Brighton, thus, Defendants are not entitled to a summary judgment of non-
22 infringement.  *Cf. Hamil Am., Inc. v. GFI, Inc.*, 193 F.3d 92 (2d Cir. 1999) (affirming
23 bench trial finding of infringement by knockoff fabric with similar design of "clusters of
24 small white and yellow flowers with blue centers on a red background"); *Knitwaves, Inc. v.*
25 *Lollytogs Ltd.*, 71 F.3d 996 (2d Cir. 1995) (affirming, after bench trial, copyright
26 infringement of sweater design with arrangement of leaves and squirrels in fall colors).
27
28

### III. Statute of Limitations Defense

#### A. Fact Issues Remain on When Plaintiff Should Have Discovered the Infringement

The Copyright Act's statute of limitations provides: "No civil action shall be maintained under the provisions of this title unless commenced within three years after the claim accrued." 17 U.S.C. § 507(b).[5] "A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge." *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994) (citation omitted). Either actual or constructive knowledge of facts giving rise to the alleged infringement is sufficient.

A defendant is only liable for his acts of infringement committed within three years of plaintiff's lawsuit; plaintiff may not reach back to sue for damages that occurred in an earlier time period simply because defendant continues to infringe. *Id.* (collecting cases).

The discovery rule applies and "§ 507(b) permits damages occurring outside the three year-year window, so long as the copyright did not discover – and reasonably could not have discovered – the infringement before the commencement of the three-year limitation period." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004).[6]

---

[5] Defendants contend that Brighton's trademark and trade dress infringement claims are also barred by the statute of limitations.
  The Lanham Act does not have its own limitations period, thus a federal court borrows the most analogous state statute. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002). The parties dispute whether the California fraud statute (three years) or unfair competition statute (four years) is most relevant.
  The Court agrees with the *Internet Speialities W., Inc. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 990 n.2 (9th Cir. 2009) decision, which borrowed from California's unfair competition statute. That statute is the most analogous to the facts of this case because it protects business trademarks from dilution by another company's unauthorized use of similar designs. Cal. Bus. & Prof. Code § 17208; *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 846 F. Supp. 2d 1063, 1081 (N.D. Cal. 2012); *Suh v. Yang*, 987 F. Supp. 783, 795 (N.D. Cal. 1997). Thus, a four-year period applies to the federal trademark claims.

[6] Ninth Circuit case law does not support Defendants' broader contention that a plaintiff who has constructive or actual knowledge of infringement is forever barred from suing if he does not file suit within three years. When the defendants *continue* to infringe the copyright, the statute of limitations simply prevents the copyright owner from collecting damages for stale

1 Defendants present facts showing that Brighton's owner, Jerry Kohl, received tips 2 that Defendant RK Texas Leather was selling infringing products as early as 2002. On 3 October 3, 2002, Kohl received an email from a business associate (Michael) reporting that 4 a store near Chicago, Illinois "was selling handbags, small leathers from a resource by the 5 name of Texas Leather[] – this merchandise is a direct knockoff in plastic of Brighton – 6 even the metal works looks like it was directly copied – Is there anything we can do to 7 protect our selves?" Maclemore Decl., Ex. 1.

8 Later, in December 2005, Kohl received an email from a colleague (Preccia Davis) 9 that "Lonestar Emporium still has some of the Brighton knockoffs." *Id.*, Ex. 3. Davis 10 reported that an employee in the store identified Texas Leather as the manufacturer. *Id.* 11 Further, the employee at the Emporium described the products as "Brighton look-a-likes." 12 *Id.*

13 Defendants argue that these red flags put Brighton on notice that Defendant RK 14 Texas Leather could be selling infringing products and that Brighton had a duty to exercise 15 reasonable diligence to investigate the tips in order to protect its copyrights.[7] Defendants 16 note that RK Texas Leather had been registered as a corporation since 1988 and Brighton 17 could have easily obtained its address from the Texas Secretary of State's website. *Id.*, Ex. 18 8. Defendants argue Brighton waited too long before filing suit in 2010.

19 Brighton, however, presents facts suggesting that it did investigate the tips and 20 concluded that Defendant Texas Leather was not infringing Brighton's intellectual property 21 rights at that time. Kohl testified that upon receiving Michael Hecht's 2002 email, he 22 visited the location of the store in question but it had closed. Wesley Decl., Ex. 101 (Kohl 23 Depo. at 51). He visited dozens of other stores in the mall and could not find a "western

---

acts of infringement. *Polar Bear*, 384 F.3d at 706-07 & n.4; *Fahmy v. Jay-Z*, 835 F. Supp. 2d 783, 788 (C.D. Cal. 2011); *Hoey v. Dexel Sys. Corp.*, 716 F. Supp. 222, 223-24 (E.D. Va. 1989).

[7]Defendants argue other evidence shows Brighton employees visited Defendants' booths at trade shows and that another alleged infringer, Dynasty, told Kohl that Defendant Texas Leather was infringing. But Brighton shows that those facts arose in 2008 or 2010 and thus do not necessarily advance Defendants' statute of limitations argument. Pl.'s Opp. Br. at 11-14.

1 store" selling knockoffs. *Id.* (Depo. at 151-52).

2 Kohl admits that he did not at that time conduct any additional investigation of "Texas Leather," but he explains that he received numerous reports over the years, went on many "wild-goose chases" and had become "a little numb to them after a while." *Id.* (Depo. at 53-54 & 152-53).

6 Though his testimony is vague as to time, Kohl did at some point become aware that Texas Leather was selling look-alike products in various stores. *E.g., id.* (Depo. at 51-52). In those instances, Kohl testified that he visited the store to examine the products but concluded that the specific items on display did not infringe Brighton's designs. *Id.*

10 Kohl stated that when he received the second email in 2005 he visited a store in Pasadena, California that he knew sold Texas Leather products. *Id.* (Depo. at 157-58). After examining the products at that location, he concluded they did not infringe. Kohl also said weighed the source of the information and that he discounted Preccia Davis' opinion because "I'm not sure she'd know a Brighton knockoff." *Id.*

15 These conflicting facts create a genuine dispute for the jury to resolve. Accordingly, the Court denies the motion for summary judgment on the statute of limitations defense. Consequently, the Court denies as moot Brighton's objection that the other Defendants cannot join this motion because different facts would disclose when Brighton became aware of their allegedly infringing conduct.

20 **B. Equitable Defense of Laches**

21 Defendants also seek summary adjudication of their laches defense. "Laches is an equitable defense that prevents a plaintiff, who with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-51 (9th Cir. 2001) (citations and internal quotation marks omitted). A party asserting laches must show the plaintiff's unreasonable delay caused prejudice to defendant. *Id.* at 951. The doctrine recognizes it would be unfair to let a copyright owner "stand inactive while the proposed infringer spends large sums of money" to market the product and then "intervene only when his speculation proved a success." *Id.* (quotation omitted).

1    Defendants rely on the same facts outlined above to argue that Brighton knew Texas
2    Leather was selling knockoffs, but let Defendants continue to invest in the infringing
3    products in an effort to increase the damages that Brighton would recover once it finally
4    filed this lawsuit.
5    For largely the same reason that the Court denied summary judgment on the statute
6    of limitations defense, the Court concludes that the facts are in dispute as to whether and
7    when Brighton knew that Defendants were selling knockoffs of specific Brighton designs.
8    Resolution of this equitable defense must await a full exploration of the facts at trial.

### IV. Pretrial Schedule

When this action was transferred to the under-signed, the pretrial schedule was vacated. [Doc. No. 216] As the action is now ready for trial, the Court instructs the parties to contact Magistrate Judge William Gallo to schedule the remaining pretrial dates, including a mandatory settlement conference and the pretrial conference.

### Conclusion

Upon due consideration of the parties' memoranda and exhibits, a review of the record, and for the reasons set forth above, the Court hereby denies Defendants' motions for summary judgment on Plaintiff's copyright infringement claim. [Doc. Nos. 136 & 174] The Court denies Defendants' motion for summary judgment on the statute of limitations and laches defenses. [Doc. No. 170] The Court overrules Plaintiff's objections to the notices of joinders. [Doc. Nos. 193 & 195]

The parties shall promptly contact the Magistrate Judge to request a Fifth Amended Scheduling Order.

**IT IS SO ORDERED**.

DATED: December 13, 2012

HON. GONZALO P. CURIEL
United States District Judge