# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGHTON COLLECTIBLES, INC., | CASE NO. 10-CV-419-GPC (WVG) |
| Plaintiff, | **ORDER DENYING DEFENDANT AIF CORPORATION, INC'S MOTION FOR JUDGMENT AS A MATTER OF LAW, AND IN THE ALTERNATIVE, FOR A NEW TRIAL** |
| vs. | |
| RK TEXAS LEATHER MFG; K & L IMPORTS, INC.; et al., | [Dkt. No. 393.] |
| Defendants, | |
| and related cross claims. | |

Before the Court is Defendant AIF Corporation, Inc.'s ("AIF" or "Defendant") motion for judgment as a matter of law, or in the alternative, for a new trial. (Dkt. No. 393.) Plaintiff Brighton Collectibles, Inc. ("Brighton" or "Plaintiff") filed an opposition on March 3, 2014. (Dkt. No. 406.) AIF filed a reply on April 7, 2014. (Dkt. No. 409.) A hearing was held on May 16, 2014. (Dkt. No. 415.) Based on a review of the briefs, the record, hearing arguments by the parties, and the applicable law, the Court DENIES AIF's motion for judgment as a matter of law, and in the alternative, for a new trial.

## Background

Starting October 23, 2013, the Court held a five-day jury trial on Plaintiff's

1   Complaint alleging copyright infringement against Defendant AIF.[1]  On October 30,

2   2013, the jury returned a special verdict in favor of Plaintiff and against Defendant

3   AIF. (Dkt. No. 386.)  Specifically, the jury found that AIF infringed upon valid

4   copyrights owned by Brighton. (Id.)  Out of 51 of AIF's designs, the jury found

5   infringement for 39 of the designs encompassing 11 copyrights. (Id.)  The jury also

6   found that AIF did not engage in copyright infringement willfully or innocently. (Id.)

7   For damages, the jury awarded Plaintiff $1,000,000 in lost profits and $1,050,000 in

8   statutory damages.  (Id.)

9        Plaintiff filed a copyright, trademark, and trade dress infringement complaint on

10  February 24, 2010. (Dkt. No. 1.)  AIF was later added to the case, in February 2011,

11  on Brighton's First Amended Complaint solely on copyright infringement. (Dkt. No.

12  51.)

13       The issue rased in this motion concerns the lost profit damages assessed against

14  AIF.  Therefore, some background as to the discovery of AIF's sales invoices is

15  relevant.  Fact discovery in this case closed on March 9, 2012.  AIF produced some

16  invoices during discovery and continued to produce sales records after discovery had

17  closed.  AIF submitted supplemental invoices to Brighton on June 1, 2012, July 6,

18  2012, July 10, 2012; July 23, 2012, July 25, 2012, and June 10, 2013.

19       At first, AIF had difficulty producing invoices because Brighton had not

20  disclosed any SKU numbers that were alleged to have infringed its designs.  This was

21  accomplished on December 20, 2011.  In addition, AIF had challenges producing

22  invoices because the invoices were all in paper form until AIF adopted Quick Books

23  in 2010.  The final production of invoices occurred on September 23, 2013, one month

24  before trial, which amounted to 32,000 AIF invoices with dates ranging from 2005 to

25  2009 which were admitted at trial as Exhibits JO, JP, JQ, JR, JS, JT and OP.  On

26  October 8, and again on October 21, 2013, AIF's damages expert David Drews

27

28        [1]While numerous defendants were named in the complaint, all settled prior to and at the start
     of trial.

submitted a supplemental expert report that took into account the additional invoices produced after the close of discovery.  According to Drews' calculations, AIF's gross revenues from its sale of the accused products were $24,692.46 and its net profits were $3,640.76.  (Dkt. No. 409-4, Walker Decl., Ex. E.)

Over AIF's relevance objection, the Court allowed Plaintiff to admit AIF's total gross revenues of all products from 2004-2010 which totaled $55,823,870.  This was the only calculation provided by Plaintiff to the jury.  As a result, during rebuttal closing argument, Plaintiff's counsel stated, "[t]he fact is we don't know what they have sold of these designs in issue.  We don't know if they were $25,000 or a million dollars, or $5 million."  (Dkt. No. 393-4 at 3.)

AIF moves pursuant to Federal Rule of Procedure ("Rule") 50(b), or alternatively, it also moves for a new trial pursuant to Rule 59(a) based on the jury's special verdict of lost profit damages of $1,000,000 as speculative, excessive and not supported by substantial evidence.

AIF also argues that the jury's statutory damages of $1,050,000 was calculated improperly.  It contends that since the jury found only 11 infringing works at issue, and no willful infringement, the statutory award could not be more than $330,000 as provided in 17 U.S.C. § 504(c).  Plaintiff does not dispute this and agrees with AIF.  However, Plaintiff argues it will be selecting "lost profits" as its damages of choice as long as the Court does not grant AIF's motion.

## DISCUSSION

**I.      Judgment as a Matter of Law**

**A.      Legal Standard**

As a threshold matter, the Court must determine whether AIF waived its right to move for judgment as a matter of law by failing to move for judgment as a matter of law at the close of the evidence.  Under Rule 50(a)(1):

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . resolve the issue against the party; and . . . grant a motion for judgment as a matter of law

1

against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

2   Fed. R. Civ. P. 50(a)(1).   "A motion for judgment as a matter of law may be made at

3   any time before the case is submitted to the jury.   The motion must specify the

4   judgment sought and the law and facts that entitle the movant to the judgment."  Fed.

5   R. Civ. P. 50(a)(2).  "If the court does not grant a motion for judgment as a matter of

6   law made under Rule 50(a), the court is considered to have submitted the action to the

7   jury subject to the court's later deciding the legal questions raised by the motion." Fed.

8   R. Civ. P.  50(b).

9

No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an

10   alternative or joint request for a new trial under Rule 59.  In ruling on the renewed motion, the court may ... (1) allow judgment on the verdict, if the

11   jury returned a verdict; . . . (2) order a new trial; or . . . (3) direct the entry of judgment as a matter of law.

12   Id.

13       The Ninth Circuit "strictly adhere[s] to the requirements of Rule 50(b), which

14   prohibit a party from moving for judgment as a matter of law after the jury's verdict

15   unless that motion was first presented at the close of evidence."   Image Technical

16   Servs., Inc. v. Eastman Kodak Co., 125 F.3d 1195, 1212 (9th Cir. 1997).  If a party fails

17   to make a motion for judgment as a matter of law under Rule 50(a) before the case is

18   submitted to the jury, "a party cannot question the sufficiency of the evidence either

19   before the district court . . . or on appeal."   Cabrales v. County of Los Angeles, 864

20   F.2d 1454, 1459 (9th Cir. 1988) (emphasis omitted), vacated on other grounds by 490

21   U.S. 1087 (1989).

22       However, "[w]hen a special verdict does not support a judgment a reviewing

23   court may make an exception to the Rule 50(b) requirement of a motion for directed

24   verdict as a prerequisite to a motion for JNOV."[2]  Pierce v. S. Pacific Transp. Co., 823

25   F.2d 1366, 1369 (9th Cir. 1987).  "Similarly, when a jury's answers are irreconcilably

26

27       [2]In 1991, motion for directed direct, under Rule 50(a) and a motion for judgment notwithstanding the verdict ("JNOV") under Rule 50(b) were amended to be called motions for

28   judgment as a matter of law.  Fernandez v. City of San Francisco, No. C-93-2597, 1996 WL 162993, at *2 n. 1 (N.D. Cal. 1996).

inconsistent, a reviewing court may review whether the answers support the judgment even in the absence of either a motion for directed verdict or a motion for JNOV." Id. A motion for JNOV is not required to be made for a motion for JNOV "when the challenge is to the consistency of the answers under a Rule 49(a) special verdict, and not to the sufficiency of evidence supporting a general verdict." Id.; see also Ferarolis v. Int'l Recovery Sys., Inc., 2006 WL 1371187, at 4 (E.D. Pa. May 18, 2006) (Rule 50 motion not appropriate to challenge legal errors made by the court) (citing Greenleaf v. Garlock, Inc., 174 F.3d 352, (3d Cir. 1999)). In the absence of a rule 50(a) motion, a party is precluded from later challenging the sufficiency of the evidence either before the district court through a renewed motion for judgment as a matter of law or on appeal. Farley Transp. Co., Inc. v. Santa Fe Trail Transp. Co., 786 F.2d 1342, 1347 (9th Cir. 1986).

Here, Plaintiff did not move for judgment as a matter of law under Rule 50(a) prior to the case being submitted to the jury. Plaintiff argues that its case falls under the exception because the jury's award was inconsistent with the special verdict. The Court disagrees. AIF challenges the special verdict damages award based on the underlying evidentiary ruling by the Court which allowed Plaintiff, through its damages expert, to present Defendant's total gross revenues generated during the infringement period. Contrary to AIF's argument, the special verdict answers are not irreconcilably inconsistent, and AIF seeks to challenge the sufficiency of the evidence which requires that AIF first move under Rule 50(a).

However, AIF may move for a motion for new trial under Rule 59(a) and challenge a court's evidentiary ruling. Klein v. Hollings, 992 F.2d 1285, 1289-90 (3d Cir. 1993). "Unlike a motion for judgment as a matter of law, a motion for a new trial does not have to be preceded by a Rule 50(a) motion prior to submission of the case to the jury." Freund v. Nycomed Amersham, 347 F.3d 752, 765 (9th Cir. 2003). In deciding a Rule 59(a) motion, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most

favorable to the prevailing party." <u>Landes Const. Co., Inc. v. Royal Bank of Canada</u>, 833 F.2d 1365, 1371 (1973).  However, a stringent standard applies when the motion is based on insufficiency of the evidence.  <u>Venegas v. Wagner</u>, 831 F.2d 1514, 1519 (9th Cir. 1987).  On this basis, a  motion will be granted only if the verdict "is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result."  <u>E.E.O.C. v. Pape Lift, Inc.</u>, 115 F.3d 676, 680 (9th Cir. 1997) (internal quotations omitted). "The district court cannot substitute its evaluations for those of the jurors." <u>Tortu v. Las Vegas Metro. Police Dept.</u>, 556 F.3d 1075, 1084 (9th Cir. 2009). The court "may not grant or deny a new trial merely because it would have arrived at a different verdict." <u>United States v. 4.0 Acres of Land</u>, 175 F.3d 1133, 1139 (9th Cir. 1999).  The Ninth Circuit provides the following guidance on this somewhat imprecise standard:

> On the one hand, the trial judge does not sit to approve miscarriages of justice. His power to set aside the verdict is supported by clear precedent at common law and, far from being a denigration or a usurpation of jury trial, has long been regarded as an integral part of trial by jury as we know it. On the other hand, a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter. Probably all that the judge can do is to balance these conflicting principles in the light of the facts of the particular case. If, having given full respect to the jury's findings the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial.

<u>Landes Const. Co., Inc.</u>, 833 F.2d at 1371–72 (footnotes omitted).  The district court has discretion in ruling on a motion for a new trial.  <u>SEC v. Todd</u>, 642 F.3d 1207, 1225 (9th Cir. 2011).

**B.    Lost Profit Damages**

The copyright owner is entitled to either actual damages and any additional profits of the infringer or statutory damages.  17 U.S.C. § 504(a).  The copyright owner may elect to pick either at any time before final judgment.  17 U.S.C. § 504(c)(1). Plaintiff asserts that it seeks to recover the lost profits award of damages as long as the Court does not grant Defendant's motion.

As to actual damages and profits,

The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and *any profits of the infringer that are attributable to the infringement* and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b)(emphasis added). Lost profits can be direct or indirect and is the wrongfully obtained profits resulting from the infringement. Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 710 (9th Cir. 2004).

The burden is on the copyright owner to present proof "only of the infringer's gross revenue" and then the burden shifts to the infringer to demonstrate its "deductible expenses and the elements of profits attributable to factors other than the copyrighted work." Polar Bear, 384 F.3d at 711 (citing 17 U.S.C. § 504(b).

It is "implicit that the profits sought are those that arise from the infringement" and a copyright owner must present a gross revenue number that bears a "legally significant relationship" to the infringement. Id. at 711. Therefore, Plaintiff must demonstrate a causal link between the infringement and the profits sought. Id. at 712. Damages must be sufficiently supported by the evidence and non-speculative. Id. at 708. "When an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner." Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 517 (9th Cir. 1985).

With these requirements in mind, the Court addresses AIF's challenge to the $1 million profit award. At trial, Brighton did not give an estimate for AIF's profits allegedly gained from its unauthorized use of Brighton's copyrighted material. Instead, Brighton provided an estimate of the total gross sales of all AIF profits. The evidence admitted showed that AIF sold hundreds of watches and the jury found that AIF violated 39 copyright designs. (Dkt. No. 386.)

AIF contends that Plaintiff's introduction of and the court's erroneous

evidentiary ruling admitting, over the relevance objection of defense counsel, Defendant's total gross revenues of $55,823,870, Exhibit No. 568, generated during the period of infringement from 2004-2010 was prejudicial because it was not attributable to the gross revenues of infringing products.  As such, the jury's award based on Defendant's lost profits is speculative and excessive as a matter of law and not supported by the evidence at trial.  In fact, according to Defendant, the evidence at trial revealed that there was about $25,000 in gross revenues based on sales of the infringing products and about $3,600 in net profits during the period of infringement.  Therefore, the jury verdict award of $1,000,000 contrasts grossly with the $25,000 in gross revenues of invoices presented at trial.  AIF asserts that since Plaintiff failed to meet its burden of proving gross revenues generated by the infringing sales, Defendant's profits should be limited to the evidence of sales adduced at trial by the Defendant.

Plaintiff opposes arguing that the jury's award was well within the permissible range based on the evidence.  The jury's award of $1,000,000 is less than 1.8 percent of AIF's total sales of $55,823,870.  Plaintiff asserts that the jury could not reasonably estimate profits when there were no sales records for over half of the AIF styles at issue; there were no pre-2005 sales records for any of the AIF styles at issue; AIF could not fill in the gaps through testimony; and AIF's testimony that it produced all of its records was not credible.  Plaintiff contends that the jury considered the incomplete sales invoices produced by AIF; the 2004 AIF catalog indicating the quantity of infringing AIF product compared to non-infringing AIF product; AIF's total sales during the majority of the period of infringement; AIF's testimony; and testimony from the parties' respective expert economists.  Based on what was available and presented, the jury's award of $1million should not be disturbed.

When a defendant, "who has control of the evidence of sales, fails and refuses to produce evidence of sales or absence of sales, plaintiffs may be allowed to use "indirect and less definite and certain methods of proof."  <u>Deering Milliken & Co. v.</u>

<u>Gilbert</u>, 269 F.2d 191, 193 (2d Cir 1959) (holding that where defendant produces no evidence of sales, defendant bears risk of uncertainty in damages determination relying on circumstantial evidence).  In <u>Gilbert</u>, the defendant was patently evasive; denying any palming off and cloaked his answers by a short memory.  <u>Id.</u>  Plaintiff need only establish "a basis for a reasoned conclusion as to the extent of injury caused by the deliberate and wrongful infringement."  <u>Id.</u>  If there is incomplete evidence of sales of infringing goods, the Court "may justifiably rely on circumstantial evidence involving the extent of an infringer's wrongdoing."  <u>N.Y. Racing Ass'n, Inc. v. Storup News Agency Corp.</u>, 920 F. Supp. 295, 301 (N.D.N.Y. 1996) (trademark infringement case).

In a case where damage calculations are not exact, and while damages may not be based on mere speculation or guess, "it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." <u>Story Parchment Co. v. Paterson Parchment Paper Co.</u>, 282 U.S. 555, 563 (1931).  A wrongdoer cannot complain that the damages cannot be measured with exactness and precision.  <u>Id.</u>  "The risk of uncertainty should be thrown upon the wrongdoer instead of upon the injured party."  <u>Id.</u>

In <u>Cosmos</u>, the district court assessed the amount of damages in the form of defendant's profits to be $2,341,526.52.  <u>Cosmos Jewelry Ltd. v. Po Sun Hon Co.</u>, 470 F. Supp. 2d 1072, 1087 (C.D. Cal. 2006), <u>aff'd</u>, <u>Cosmos Jewelry, Ltd. v Po Sun Hon Co.</u>, 2009 WL 766517 (9th Cir. 2009).  The plaintiff alleged copyright infringement of its plumeria-themed jewelry.  <u>Id.</u> at 1081.  The amount of damages awarded consisted of gross sales from selling infringing plumeria jewelry, including non-infringing jewelry.  <u>Id.</u> at 1081.  In reviewing the defendant Hon's invoices, plaintiff was unable to distinguish between plumeria and nonplumeria jewelry in the invoices because of the poor quality of the invoices.  <u>Id.</u>  The district court found that a large portion of the defendant's total profits was attributable to the sale of plumeria-themed jewelry.  <u>Id.</u>  The Ninth Circuit affirmed and expressed concern that the amount of damages included some jewelry sales that did not infringe; however, because Hon's

testimony was unreliable and the records he produced were "limited, illegible, and of course subject to a credibility determination themselves", reversal was not warranted. Id. at *2. The Ninth Circuit noted that since both Plaintiff and the district court could not reasonably account for Hon's profits or sales from infringing jewelry less non-infringing jewelry, then Plaintiff was entitled to the award of the total amount of profits from the infringing period. Id.

In this case, while a similar factual situation as in Cosmos exists due a lack of complete sales invoices to determine gross profits attributable to the infringing products, and credibility issues as to the defendant's corporate representative, the jury did not award the total gross sales of $55,823,870, but based on the evidence provided, came to a determination of $1,000,000, less than 1.8% of the total gross sales.

The sales invoices produced by Defendant were both untimely and incomplete which deprived Plaintiff from making a diligent review of the records to establish a causal connection between the infringement and the gross revenue reasonably associated with the infringement.

While the Court acknowledges that AIF had difficulty providing its sales invoices concerning the accused watches because all records prior to 2010 were all in paper form, the timing of supplemental disclosures of sales invoices raises questions as to Defendant's attempt to "hide the ball" until the eve of trial. AIF provided supplemental disclosures of invoices on June 1, 2012, July 6, 2012, July 10, 2012; July 23, 2012; and July 25, 2012 which consisted of about 241 pages (AIF 545-786). Then, on June 10, 2013, AIF provided additional sales invoices, (AIF 787-795), which consisted of nine pages. Then, on September 23, 2013, one month before trial, AIF produced ten additional boxes of invoices amounting to 32,000 invoices dating from 2005 to 2009 (AIF 796-33484).

It is curious that one month before trial, Defendant presents the bulk of its invoices to Plaintiff. There is no explanation why the bulk of the invoices were not disclosed earlier. Not only is the late disclosure questionable, courts have recognized

late submission of documents or expert reports prejudices the opposing party.  See Staley v. U.S. Bank Nat. Ass'n, 10cv591-BLW, 2013 WL 331271, at *5 (D. Idaho Jan. 29, 2013) (citing Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002)); GenSci OrthoBiologics v. Osteotech, Inc., 2001 WL 36239743, at 18 (C.D. Cal. Oct. 18, 2001) (excluding relevant supplemental expert reports because they were not provided until the eve of trial and would greatly prejudice defendant who had no time to prepare a response to these supplements).  Here, the late disclosure of sales invoices prevented Plaintiff and its expert from thoroughly reviewing the records, from conducting discovery or depositions, and from allowing Brighton's damages expert to file a response to Defendant's final supplemental expert report which was not completed until October 21, 2013, two days before trial.  Clearly, there was insufficient time for Brighton to respond to Drews' analysis and conclusion.  The Court also notes that Plaintiff filed a motion in limine to exclude these invoices due to their late submission.  (Dkt. Nos. 302, 352.)  The Court intended to exclude the invoices in its tentative ruling until Plaintiff informed the Court that it reached an agreement and withdrew that motion.  (Dkt. No. 414 at 10.)

Despite the late submission, in looking closely at Drews' supplemental expert report, the Court notes that the report raises questions as to the completeness of the records he reviewed and the validity of his calculations.  In his report, Drews states that as to the numerous terms of "Western", "wstl" and "wstm" in the invoices, it was "impossible to ascertain whether they were related to an accused product or not.  I have therefore not included any of these sales in my results, unless they also met one of the product number criteria."  (Dkt. No. 409-4, Drews' Suppl. Expert Report at 6.)  Thus, a large number of product items were not accounted for in Drews' calculations of gross sales of infringing products.

Moreover, a careful look at the invoices with infringing products reviewed by Drews demonstrates that he may not have reviewed a complete set of invoices.  (Id. at 11-17.)  First, Helby Import Co. was a big customer of AIF from 2006 to 2009.

However, there is an absence of any sales by Helby from July 25, 2007 to January 2, 2008 and then no invoices after September 19, 2009. In addition, Brightlings appears to be another major customer of AIF. However, no sales to Brightlings is noted after July 2009 and none between April 2007-January 2008 and again from December 2008 to July 2009, and after one sale on July 2, 2009, no additional sales after July 2009. The lack of invoices for certain time period could demonstrate that there are many missing invoices not accounted for in Drews' calculations. Furthermore, the fact that AIF did not have any invoices with purchases from RK Texas Leather Mfg., Inc. who purchased infringing watches from AIF, is telling as to the completeness of the invoices.[3]

These examples raise grave doubts about the completeness of the invoices disclosed. Not only did it appear that Plaintiff did not have a complete set of invoices from January 2005 through December 2011, the period that Drews reviewed, but no invoices were produced for 2004 which accounted for half of the infringing products. (Dkt. No. 406-1, Wesley Decl., Ex. D, 10/28/13 Trial Tr. at 70:11-21 (Issa testified that no records were produced or admitted prior to 2005).) Plaintiff obtained a copy of the 2004 AIF catalog, not produced by AIF, which showed 27 new product numbers of infringing products. Lastly, the invoices only accounted for 23 products out of the 51 products at issue so 28 product invoices were not produced. (Dkt. No. 406-1, Wesley Decl., Ex. D, 10/28/13 Trial Tr. at 163:24-165:6.)

Lastly, there were serious questions regarding the credibility of AIF's corporate representative, Imran Issa. At his deposition, he answered most questions with "I don't know," or "I don't remember" even the questions one would think he would know the answer. His answers appeared evasive and cryptic. As the person most knowledgeable, he failed to provide any useful information to Plaintiff in order to calculate lost profits. The jury most likely questioned the credibility of Issa's testimony

---

[3]Issa testified that he did not find sales records that were produced by Texas Leather in its own files.

on damages.

Although Plaintiff did not provide Dr Drews' gross revenue calculations attributed to the infringement to the jury, AIF did.  AIF presented evidence of the total amount of gross revenues from the infringing products and the net profit through its expert, David Drews, and from the testimony of Imran Issa, AIF's Vice President. (Dkt. No. 393-3, Walker Decl., Ex. A, Tr. Trans. 10/28/13 at 39:10-16; Tr. Trans. 10/28/13 at 148:3-22.)  Defendant also raised these amounts in closing stating that the infringement consisted of less than $25,000 worth of revenue and less then $5,000 worth of profits. (Dkt. No. 391, Tr. Trans. 10/29/13 at 58:16-19; 86:10-11.)  Based on the competing evidence and competing credibility of experts and witnesses, the jury assessed an award of $1,000,000 in lost profits.  The Court should not disturb a jury's determination absent evidence to the contrary.  Polar Bear, 384 F.3d at 713 ("In the absence to the contrary, we presume that the jury fulfilled its duty to apportion profits."); Summit P'ship v. Turner Broad Sys., Inc., 235 F.3d 1184, 1192 (9th Cir. 2000) ("weighing the credibility of conflicting expert witness testimony is the province of the jury"); Long v. Johnson, 736 F.3d 891, 896 (9th Cir. 2013) (courts must "respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts.")

Due to the lack of complete invoices of sales of the infringing products, Brighton sought to provide the jury with a range it could consider.  The Court does not find that AIF was prejudiced by the Court's admission of Exhibit 568 concerning AIF's total gross sales on all products from 2004-2010, the relevant infringing time period.  The jury awarded $1,000,000, less than 1.8% of the gross revenues of total products.[4] Based on what was presented to the jury, the Court does not find that the verdict of

---

[4]In its reply, for the first time, AIF argues that any sales prior to 2008 is irrelevant anyway because of the three year statute of limitations.  Courts generally decline to consider new facts or different legal arguments raised for the first time in the reply brief.  Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).  Since AIF raises this issue for the first time in its reply, which prevents Plaintiff from providing a response, the Court declines to consider it.

$1,000,000 is against the "great weight of the evidence" or that the jury reached a "seriously erroneous result."  See Pape Lift, Inc., 115 F.3d at 680.  Thus, the Court DENIES AIF's motion for a new trial.

### Conclusion

Based on the above, the Court DENIES Defendant AIF's motion for judgment as a matter of law pursuant to Rule 50(b); and alternatively, DENIES AIF's motion for a new trial under Rule 59(a).

IT IS SO ORDERED.

DATED:  May 27, 2014

HON. GONZALO P. CURIEL
United States District Judge