**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

BRIGHTON COLLECTIBLES, INC.,
Plaintiff,
vs.
RK TEXAS LEATHER MFG; K & L IMPORTS, INC.; et al.,
Defendants,
and related cross claims.

CASE NO. 10-CV-419-GPC (WVG)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

[Dkt. Nos. 435, 443.]

Before the Court is Plaintiff Brighton Collectibles, Inc.'s ("Brighton" or "Plainitff") motion for attorneys' fees. (Dkt. No. 435.) Defendant AIF Corporation ("AIF" or "Defendant") filed an opposition. (Dkt. No. 442.) Brighton filed a reply (Dkt. No. 447.) Based on the parties' briefs, supporting documentation, and the applicable law, the Court GRANTS in part and DENIES in part Plaintiff's motion for attorneys' fees.

## Background

Brighton manufacturers and sells women's fashion accessories, including watches. Brighton filed this action in February 2010 against RK Texas Leather Manufacturing, Inc. ("Texas Leather") alleging numerous violations of Brighton's intellectual property rights. (Dkt. No. 1.) On December 6, 2010, Texas Leather filed a third party complaint against K & L Import, Inc., NHW, Inc., YK Trading, Inc., JC NY, Joy Max Trading Inc., and AIF Corporation. (Dkt. No. 17.) Subsequently, on

February 28, 2011, Plaintiff filed a first amended complaint ("FAC") adding the third party defendants. (Dkt. No. 51.) On August 31, 2011, Brighton filed a second amended complaint ("SAC"). (Dkt. No. 87.) As to AIF, the SAC alleged claims solely on copyright infringement. Prior to and at the start of trial, all Defendants settled with Plaintiff except AIF.[1]

Beginning October 23, 2013, the Court held a five-day jury trial on Plaintiff's second amended complaint alleging copyright infringement against Defendant AIF. On October 30, 2013, the jury returned a special verdict in favor of Plaintiff and against Defendant AIF. (Dkt. No. 386.) Specifically, the jury found that AIF infringed upon valid copyrights owned by Brighton. (Id.) Out of 51 of AIF's designs, the jury found infringement for 39 of the designs encompassing 11 out of 14 copyrights alleged against it. (Id.) The jury also found that AIF did not engage in copyright infringement willfully. (Id.) For damages, the jury awarded Plaintiff $1,000,000 in lost profits damages. (Id.) On December 4, 2013, AIF filed a motion for judgment as a matter of law, and in the alternative, motion for new trial challenging the jury's lost profits damages award. (Dkt. No. 393.) On May 27, 2014, the Court denied AIF's motion. (Dkt. No. 417.) On June 24, 2014, AIF filed a motion for reconsideration of the Court's order denying AIF's motion. (Dkt. No. 426.) On June 25, 2014, AIF filed a notice of appeal of the Court's order denying AIF's motion for judgment as a matter of law, and in the alternative, motion for a new trial. (Dkt. No. 428.) On October 24, 2014, the Court denied AIF's motion for reconsideration. (Dkt. No. 449.)

**Discussion**

**A. Recovery of Attorney's Fees**

The Copyright Act provides that "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The

---

[1]Texas Leather and Richard Ohr filed a notice of settlement on September 6, 2013. (Dkt. No. 281.) Around October 16, 2013, YK Trading settled. (Dkt. No. 348.) October 22, 2013, K&L and NHW settled. (Dkt. No. 359.) Joy Max Trading settled on October 24, 2013. (Dkt. No. 367.)

district court has discretion to grant a prevailing party attorney's fees under the Copyright Act. Mattel, Inc. v. MGA Entm't, Inc., 705 F.3d 1108, 1111 (9th Cir. 2013). The key factor in determining whether to award fees under the Copyright Act is whether the award will further the purposes of the Act. Fantasy v. Fogerty, 94 F.3d 553, 558 (9th Cir. 1996). The Act's "ultimate aim is . . . to stimulate artistic creativity for the general public good." Id. (quoting Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975)).

In determining whether to award attorney's fees, the court may consider non-exclusive factors such as: (1) the degree of success obtained; (2) frivolousness of the losing party; (3) motivation of the losing party; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence. See Fantasy, 94 F.3d at 534 n.19; see also Love v. Assoc. Newspapers, Ltd., 611 F.3d 601, 614 (9th Cir. 2010).

**1. Degree of Success**

Here, it is undisputed that Brighton is the prevailing party. Plaintiff's degree of success was high since the jury found that AIF sold 39 watch designs out of 51 watch designs that infringed upon 11 out of 14 copyrighted designs validly owned by Brighton. The jury awarded Plaintiff $1,000,000 in lost profits which was significantly more than the alternate statutory damages of $330,000 for the infringement. (Dkt. No. 386.)

**2. Frivolousness of the Losing Party**

While Brighton alleges that AIF's litigation strategy was unreasonable and conducted in bad faith, the jury found that three copyright designs were not infringing and three copyright designs were dismissed prior to trial. This demonstrates that AIF engaged in a vigorous defense. The Court finds that AIF's defense at trial was not frivolous.

////

**3. Motivation of the Losing Party**

The Court finds that AIF's motivation in proceeding to trial was to avoid paying or reducing the amount of damages for which AIF could be held liable. As noted above, the Court does not find that the defense offered was frivolous and does not find a malicious motive in driving AIF's decision to proceed to trial.

**4. Objective Unreasonableness of the Losing Party's Factual and Legal Arguments**

Plaintiff argues that the Court should award attorneys' fees because AIF litigated in bad faith and took unreasonable positions in discovery and on the merits which resulted in increased attorneys' fees. During litigation, issues were raised as to late invoices being produced up until a month before trial and questions were raised as to the credibility of Imran Issa, AIF's corporate representative, during his deposition testimony. At his deposition, Issa responded to many questions with "I don't remember" or "I don't know." It was clear that Issa was being evasive. Based on these reasons, the Court permitted Brighton to argue for lost profit damages based on AIF's gross sales. The Court concludes that AIF's unreasonable dilatory conduct was adequately taken into account at trial by the Court's evidentiary rulings.

In opposition, AIF argues that Brighton's misuse of the judicial system by filing numerous copyright cases in the Central District of California and now the Southern District of California where Brighton insists on unreasonable, extortive settlement demands should justify denial of Plaintiff's request for attorneys' fee. It contends that Brighton is "in the business of suing its competitors who are mostly small 'ma-and-pa' retailers and distributors" alleging infringement on designs that have been around forever.[2] (Dkt. No. 442, AIF's Opp. at 5.) Brighton's abuse of the judicial system is exemplified by Brighton filing another lawsuit against AIF in Los Angeles Superior Court seeking an additional $2 million dollars for breach of warranty and equitable

[2]Despite AIF's argument that Brighton's designs are common "Western" ornamentation which have been around forever, the jury found that Plaintiff had valid copyrights.

indemnity which is in addition to the $1million Brighton was awarded in this case and without having to prove any damages.[3]

The Court finds that AIF's argument is belied by Brighton's success in this case. Moreover, to the extent that AIF believes that Brighton misuses the judicial system, AIF is free to raise those claims in litigation in the other cases.

**5. The Need to Advance Considerations of Compensation and Deterrence**

AIF also raises the argument that the $1,000,000 jury award was based on a legally impermissible jury verdict, which was raised in AIF's motion for judgment as a matter of law, and argued again in its motion for reconsideration that the Court rejected. The Court found that due to AIF's late and incomplete disclosure of invoices of sales of the infringing products, Brighton was entitled to provide the jury with a damages range tethered to AIF's total gross sales on all products from 2004-2010, the relevant infringing time period. The jury awarded $1,000,000, less than 1.8% of the gross revenues of total products. Based on the evidence presented to the jury, the Court found that the $1,000,000 jury award was not against the "great weight of the evidence" and that the jury had not reached a "seriously erroneous result." (Dkt. No. 417 at 14.)

While the $1,000,000 jury award did not warrant a new trial or judgment as a matter of law, the Court concludes that the award constitutes a significant deterrent specifically for AIF and generally for any potential copyright infringer. The question becomes whether the $1 million award alone provides sufficient deterrence. The Court concludes that an equitable reduction in lodestar, as set out herein, is warranted and will provide sufficient deterrence.

**B. Calculation of Attorneys' Fees**

Plaintiff seeks attorneys' fees in the amount of $808,877.00 for 1,815.30 hours

[3]In this case, Texas Leather and Brighton entered into a settlement agreement prior to trial where Texas Leather assigned its rights to Brighton for indemnification against AIF, the vendor of some of Texas Leather's infringing products.

of work. (Dkt. No. 435, Ross Decl., Ex. 4.) Defendant argues that the fees are unreasonable and excessive.

The district court has wide discretion in determining the reasonableness of attorney's fees. Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992). Attorney's fees are based on the "lodestar" calculation. Hensley v. Eckerhardt, 461 U.S. 424, 433 (1983). The Court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." Id.

The lodestar figure may then be adjusted to account for reasonableness of the time expended based on a weighing of the following factors: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975). In subsequent case law, the Ninth Circuit has held that the issue of whether the fee is fixed or contingent is no longer a valid factor to consider in determining reasonable attorney's fees. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 n. 7 (9th Cir. 2011).

However, once calculated, the lodestar amount is presumptively the reasonable fee amount. Van Gerwen v. Guarantee Mut. Life Ins., 214 F.3d 1041, 1045 (9th Cir. 2000). A multiplier may then be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high. Id. (citations omitted).

Plaintiff has the burden to establish entitlement to fees and provide supporting evidence. See Hensley, 461 U.S. at 437. The Court may reduce an award based on

inadequate documentation of hours or rates requested. Id. at 433. Once the applicant submits evidence of the appropriate hours spent on litigation, "the party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged." Gates, 987 F.2d at 1397.

**1. Reasonably Hourly Rate**

Plaintiff seeks an hourly rate of between $400 per hour and $625 per hour depending on the experience of the particular attorney. Specifically, Plaintiff seeks an hourly rate of $625 for its lead counsel, Peter Ross, who has been practicing over 30 years; $525 per hour for Keith Wesley who has been in practice for 11 years; and $400 per hour for Benjamin Scheibe, who has been in practice since 1981.[4] (Dkt. No. 435, Ross Decl. ¶¶ 3, 4, 5.) Defendant asserts that Plaintiff has failed to bear the burden of producing evidence that the requested rate is reasonable.

To determine the appropriate lodestar amount, the reasonableness of the hourly billing rate must be assessed. Blum v. Stenson, 465 U.S. 886, 896 n.1 (1984). Courts look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008). Generally, the relevant community is the "forum in which the district sits." Id.

The moving party has the burden to produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987). Affidavits by the plaintiff's counsel and other counsel concerning the prevailing fees in the community, and rate determination in other cases, are satisfactory evidence of the prevailing market rate. United Steelworkers of America v. Phelps Dodge Corp.,

[4]Brighton notes that Benjamin Scheibe who has been admitted to practice since 1981 billed $400 per hour in this case even though his standard billing rate is higher.

896 F.2d 403, 407 (9th Cir. 1990).

Plaintiff presents the affidavit of its lead counsel, Peter Ross, where he provides the education, years of practice and experience of the attorneys seeking a fee award. (Dkt.. No. 435.) He also cites to cases supporting the prevailing fee from a few years back closer to the time the complaint was filed in this case. See Brighton Collectibles, Inc. v. Coldwater Creek Inc., 06cv1848-H(POR), 2009 WL 160235, at *4 (S.D. Cal. Jan. 20, 2009) ($550 per hour for lead counsel with 25 years of experience, and $625 for outside, general counsel's work with 35 years of experience were reasonable); Moore v. Bank of America, N.A. (USA), No. 03cv520, 2008 WL 68851, at *3 (S.D. Cal. Jan. 7, 2008) ($550 per hour was reasonable in Truth in Lending Act cause of action); Eldorado Stone LLC v. Renaissance Stone, 04cv2562 JM(BEN), 2007 WL 3308099, at *4 (S.D. Cal. Oct. 24, 2007) ($520 per hour was reasonable in copyright and trademark infringement case).[5]

AIF argues that Brighton submits a hearsay declaration of Peter Ross and fails to present the qualifications and experience of the other attorneys.[6] The Court disagrees. The Ross declaration provides a sufficient basis to support the attorneys' reasonable rates and provides the education, years of practice, and experience of the three attorneys. (Dkt. No. 435.)

AIF also argues that Ross's declaration lacks credibility because while Ross

---

[5]Plaintiff also presents attorney fee awards in other districts in California; however, those cases are not considered the relevant community for purposes of a reasonable hourly rate and not helpful to the Court. See Camacho, 523 F.3d at 979.

[6]AIF also cites to a billing survey conducted by ALM Media Properties LLC regarding rates being charged by the largest firms across the United States. (Dkt. No. 442-1, Walker Decl. ¶ 5; Dkt. No. 442-5, Walker Decl., Ex. D.) AIF alleges that the survey reveals that the average billing rates charged in the San Diego law firm of Luce, Forward, Hamilton& Scripps in 2010 was $510 for partners and $345 for associates. First, AIF has not cited to any cases that utilize the ALM survey to support a reasonable hourly rate. Second, one firm's billing rates do not provide an analysis of determining a reasonable hourly rate. The court is to consider prevailing rates in the community for similar services of lawyers of reasonably comparable skill and reputation. The ALM survey does not provide such an analysis. Thus, AIF's reliance on the survey is misplaced. Moreover, the Court notes that, in the survey, a partner's hourly rate ranged from $670/hr to $350/hr which can support Brighton's rates based on the education, years of practice and experience of its attorneys.

states that Schreiber's time was charged at $400 per hour, the actual billing statements show that his rate was charged at $550 per hour. In its reply, Brighton states that while Scheibe is typically billed at a higher rate, his rate was re-calculated and the $400 per hour rates applied to all Scheibe's time. (Dkt. No. 435-2, Ross Decl., Ex. 4) A look at the billing records reveals that Scheibe's rate was billed at $400 per hour. Therefore, AIF's argument is without merit.

As to the paralegal rate, Brighton states it billed $180/hour. AIF argues and to which Brighton does not respond, that Plaintiff has not provided satisfactory evidence of the prevailing market rate for paralegals in this district to be $180 per hour. Plaintiff has failed to establish that the paralegal rate sought is prevailing rate in the Southern District of California. As such, the Court conducted an independent review; however, with the absence of any evidence as to the background and experience of the paralegal, the Court was unable to determine the prevailing rate. See J&J Sports Prods., Inc. v. Diaz, 12cv1106-W(WMC), 2014 WL 1600335, at *3 (S.D. Cal. Apr. 18, 2014). In Brighton Collectibles, Inc. v. Coldwater Creek Inc., 2009 WL 160235, at *4, the court concluded that $90 to $210 per hour was reasonable for paralegal work. However, $90 to $210 per hour is a wide range depending on the education, skill and experience of the paralegal. Therefore, since no facts were presented as to the paralegal hourly rate, the Court DENIES the motion for fees as to paralegals.

In sum, the Court concludes that Plaintiff's counsels' hourly rates are reasonable but the paralegal hourly rate is not. Accordingly, the paralegal total hours of 253.50 which total **$87,345.00** shall be excluded.

**2. Hours Reasonably Expended**

The moving party bears the burden of documenting the appropriate hours spent in the litigation and submit evidence in support of the hours worked. Hensley, 461 U.S. at 433. Counsel should exclude hours that are "excessive, redundant or otherwise unnecessary." Id. at 434. The Court should decrease the hours that were not "reasonably expended." Id. The opposing party must provide "submission of evidence

to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." Gates, 987 F.2d at 1397-98 (citing Blum v. Stenson, 465 U.S. 886, 892 n. 5 (1984)); McGrath v. County of Nevada, 67 F.3d 248, 255 (9th Cir. 1995) (citations omitted) (there must be evidence to challenge the accuracy and reasonableness of the hours charged). The party opposing fees must specifically identify defects or deficiencies in the hours requested; conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees. Cancio v. Fin. Credit Network, Inc., No. C04-03755 THE, 2005 WL 1629809, at *3 (N.D. Cal. July 6, 2005).

Even if the opposing party has not objected to the time billed, the district court "may not uncritically accept a fee request," but is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. Common Cause v. Jones, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002) (citing Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1385 (9th Cir. 1984)); see also McGrath, 67 F.3d at 254 n.5 (noting that court may not adopt prevailing party's representations without conducting an independent review of the fee application).

When the district court makes its award, it must provide a "concise but clear" explanation of its reasons. Hensley, 461 U.S. at 437. It does not require the court to rule on each of defendants' specific objections; however, it requires the court to provide some indication of how it arrived at the amount of fees to allow for meaningful appellate review. Gates, 987 F.2d at 1398, 1400.

In a declaration, Plaintiff's attorneys conducted a detailed review and analysis of each billing statement. As part of that review, the attorneys evaluated which tasks "would have been undertaken by BGR even if AIF had been the lone defendant versus which tasks were undertaken solely because of Brighton's claims against other defendants." (Dkt. No. 435, Ross Decl. ¶ 10.) It divided the billing statements into the following four categories:

> Category 1: Entries that relate solely to BGR's [Browne George Ross LLP] work on Brighton's claims against AIF . . . .These entries were

marked with a star.

Category 2: Entries that relate to BGR's work on tasks that applied to Brighton's claims against multiple defendants – e.g., draft amended complaint, attend mandatory settlement conference, prepare exhibit list – where the amount of time spent by BGR would not have changed even if AIF had been the lone defendant. These entries were marked with a square.

Category 3: Entries that relate to BGR's work on tasks that applied to Brighton's claims against multiple defendants, but the amount of time incurred by BGR would have been less if AIF had been the lone defendant. These entries were marked with a triangle.

Category 4: Entries that relate to BGR's work on tasks that applied exclusively to Brighton's claims against defendants other than AIF –e.g., respond to Joy Max interrogatories, deposition of YK expert, meet and confer with Texas Leather counsel on discovery. These entries have no notations.

(Dkt. No. 435, Ross Decl. ¶ 10.)

Entries in categories 1 and 2 were included as actually billed, and no entries in category 4 were included. For entries in category 3, the attorneys estimated the amount of time it would have expended on those tasks had AIF been the lone defendant. The attorneys made that estimate based on their experience in this case and others. They state they erred on the side of underestimation. (Id. ¶ 11.)

Brighton was also represented in this matter by local counsel, Winton Law Corporation, and its outside general counsel, Law Offices of Gary Freedman. Although both of those firms played unique, important roles and billed significant amounts for work related to this litigation, Brighton has voluntarily excluded those amounts from its fee request. (Id. ¶ 14.) As a result, Brighton seeks attorney hours of 1,562 for a total of $721,532.50. (Dkt. No. 435, Ross Decl., Ex. 4.)

AIF opposes contending that Brighton did not properly apportion time especially taking into consideration that there were five other defendants and several causes of action were alleged against the other five. As to AIF, only one cause of action for copyright infringement was alleged against it. Moreover, AIF argues that the apportionment conducted by Brighton was arbitrary.

In support of its opposition, AIF provides charts, of different scenarios, to

challenge the accuracy and reasonableness of the hours charged. First, AIF contends that Brighton failed to limit its request to attorneys' fees actually and reasonably incurred against AIF only. Exhibit F to the Walker Declaration includes fees expended on prosecuting Plaintiff's claim against AIF only prior to trial and after trial once the remaining defendants had all settled with Brighton. (Dkt. No. 442-7, Walker Decl., Ex. F.) These entries total $142,143.12. A review of the chart reveals that most of the fees were incurred in the latter half of 2013 and through June 30, 2014, with six entries in 2012, and three entries in 2011 with the first entry dated April 28, 2011. AIF fails to understand the legal standard to determine attorneys' fees in a multi-defendant case. This case began in 2010 and involved work through extensive discovery, including expert discovery, motions and eventually trial. Exhibits F fails to consider work done in conjunction with other defendants which would have required work even if AIF had been the lone defendant. Exhibit F is not a proper apportionment for the Court to consider.

AIF also presents Exhibit H where it contends that these entries are marked with a star relating to entries relating to AIF where apportionment was conducted; however according to AIF, no apportionment was done. (Dkt. No. 442-9, Walker Decl., Ex. H.) A review of Exhibit H reveals that these entries are not star entries but the majority are square entries where these entries were not apportioned because work conducted would have been the same even if AIF was the sole defendant. Therefore, no apportionment was conducted. AIF also alleges that Exhibit H shows that there are numerous specific instances of unrelated charges to the prosecution of Brighton's copyright claims against AIF. Many of the entries in Exhibit H concern discovery as to Texas Leather which would have been required if AIF had been the only defendant since Texas Leather was a customer of AIF. Furthermore, summary judgment and Daubert motions were also included in the entries since AIF joined in these motions. (Dkt. Nos. 166, 175.) The Court notes that the 7/27/12 entry by KJW re: opposition to motion to exclude surveys re secondary meaning was already excluded. (Dkt. No. 435-2 at 119.) As to the

5/11/12, 5/14/12, 5/15/12, and 6/8/12 depositions of Fraser (sic), Lambert, and Paret, AIF alleges these experts address issues unrelated to AIF. Brighton does not address this allegation in its reply. Without any reference to the record in this case to the contrary, the Court excludes these fees which total **$13,593.75**.

Exhibit G allegedly represents an apportionment where all non-AIF billing have been equally divided by the number of defendants as to which common tasks were performed. Such an apportionment results in a total fee request of $291,885.24. (Dkt. No. 442-8, Walker Decl., Ex. G.) After a review of the chart, the Court is unable to determine how the calculations were made. AIF has not provided the mathematical calculation as to how it determined "Hours Which Should Have Been Allocated to AIF." (Id.) Therefore, the Court cannot make a determination as to Exhibit G.

Exhibit I includes examples of arbitrary apportionment where AIF is not listed in the entry description but the majority of the time was apportioned to AIF. Generally, the court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008). An attorney's sworn testimony concerning the amount of time required to perform a task is given considerable weight. Hunter v. County of Sacramento, No. 2:06-cv-00457-GEB-EFG, 2013 WL 55971347, at *6 (E.D. Cal. Oct. 11, 2013). For courts to deny compensation for a task, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." Hiken v. Dept. of Def., No. C 06–02812 JW, 2012 WL 3686747, at *7 (N.D. Cal. Aug. 21, 2012). A review of these entries reveals that the apportionment was proper. For example, AIF challenges that the apportioning of 2.25 hours out of 4.5 hours to prepare for the hearing on the motion for summary judgement and the 10 out of the 13 hours apportioned to AIF concerning Plaintiff's counsel's attendance at a settlement conference which included travel time from Los Angeles. The Court does not find these amounts apportioned to be excessive. As to entries concerning discovery, these entries are difficult to apportion since they involve multiple defendants and a common

core of facts. See Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A, Inc., 915 F. Supp. 2d 1179, 1189 (D. Nev. 2013) (discovery, in particular, is not amenable to apportionment because the factual predicate for the various claims are based on a common core of facts.)

AIF explains that Exhibit J contains a list of vague and nebulous entries which provide general descriptions such as "review and analyze issues", "review documents", and "prepare for trial." Therefore, AIF argues that it cannot determine what tasks are attributable to AIF and what tasks are attributable to the other five defendants. None of these were apportioned as Brighton categorized these as times which would have charged even if AIF had been the lone defendant. AIF asks the Court to exclude all these entries.

After the Court's review of Exhibit J, the Court concludes that these entries are vague and does not allow the Court to determine which defendant or specific issues the attorney has worked on. See Ravet v. Stern, 07cv31-JLS(CAB), 2010 WL 3076290, at 7 (S.D. Cal. Aug. 6, 2010). While there are many entries in the billing records listing research regarding oppositions to the motions for summary judgment and apportioning them based on content, the ones in Exhibit J fail to provide any information as to which defendant or topic it applies to. The total fees for these entries equal $80,151.25. However, $1,620.00 are attributable to paralegal fees which have already been deducted above. Therefore, the Court deducts **$78,531.25** from the fee award.

AIF also argues that the motion for attorneys' fees does not account for the six copyright infringement claims where AIF prevailed. Brighton argues that the time spent litigating the three copyright claims that were voluntarily dismissed and the three copyright claims on which the jury found no liability were inextricably intertwined with the time spent on the 11 copyrights on which Brighton prevailed. Therefore, no apportionment was required.

A plaintiff may not be awarded fees for different claims for relief that are based on different facts and legal theories where plaintiff did not prevail. Hensley, 461 U.S.

at 434-35. Apportionment is required when disproportionate time is spent against each defendant in order to ensure that a "defendant is not liable for a fee award greater than the actual fees incurred against that defendant." Jones v. Espy, 10 F.3d 690, 691 (9th Cir. 1993). Despite the general rule of apportionment, it might not be required if "it is impossible to differentiate between work done on claims." Gracie v. Gracie, 217 F.3d 1060, 1069-70 (9th Cir. 2000) (where "claims are so inextricably intertwined that even an estimated adjustment would be meaningless.") Some cases involve claims for relief that involve a common core of facts or are based on related legal theories. Hensley, 461 U.S. at 435. In these cases, counsel's time will be spent generally to the litigation as a whole making it difficult to divide the hours spent on a claim by claim basis. Id. In such a case, the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. If a plaintiff has obtained excellent result, full recovery is allowed because an enhancement may be justified. Id. Therefore, just because plaintiff did not prevail on every contention raised in the lawsuit, does not mean the fee award should be reduced. Id. Courts must focus on the result. Id. But if plaintiff achieved only partial or limited success, the lodestar amount may be excessive even if plaintiff's claims were interrelated, nonfrivolous and raised in good faith. Id. at 436. "[T]he most critical factor is the degree of success obtained." Id. at 436. Moreover, the United States Supreme Court has rejected a mathematical approach based on the total number of issues a party prevails in a case. See id. at 435 n. 11 (rejecting mathematical approach comparing the total number of issues in the case with those actually prevailed upon because it provided little guidance in determining what is a reasonable fee in light of all the relevant factors).

In this case, only one cause of action of copyright infringement was alleged against AIF. In that copyright infringement cause of action, Brighton alleged that 51 of AIF's designed infringed fourteen of its copyrights. The jury found that thirty-nine of AIF's designs infringed eleven of Plaintiff's valid copyrights. The jury concluded

that three designs did not infringe and prior to trial, the Court granted AIF's motion to dismiss three additional designs for lack of prosecution. (Dkt. No. 387.)

While AIF seeks to apportion the award based on the number of designs that did not infringe, the Court is not convinced. The jury found in favor of Brighton as to the one cause of action, copyright infringement. In litigating the copyright infringement cause of action, the litigation work conducted cannot be differentiated because the factual issues were inextricably combined. Therefore, apportionment would be difficult. Moreover, Plaintiff was successful in the results it obtained so the attorneys fee award need not be deducted even if a few copyrights were found not to infringe. See Hensley, 461 U.S. at 435-36. Accordingly, AIF's argument fails.

In a massive fee application, the court may make "across-the-board percentage cuts" instead of an hour-by hour analysis of either the number of hours claimed or in the final lodestar figure. Gates, 987 F.2d at 1399. However, the Court must articulate a reason for choosing a particular percentage cut. Id. Courts may make a small across-the-board reduction, no greater than 10 percent, based on its exercise of discretion and without a more specific explanation. Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008). Moreover, attorneys' fee awards in copyright cases depend on "equity considerations." Kamar Internat'l Inc., v. Russ Berrie and Co., Inc., 752 F.2d 1326, 1331 (9th Cir. 1984) (district court did not abuse its discretion in not awarding attorneys' fees because defendant did not willfully infringe Plaintiff's copyrights).

Absent bad faith by the losing a party a § 505 attorney's fee award "presents a clash between competing policy goals." DC Comics v. Pacific Pictures Corp., No. 10cv3633-ODW(RZx), 2013 WL 1389960, at *7 (C.D. Cal. Apr. 4, 2013) (denying an award of attorneys' fee based on Fantasy factors). On the one hand, § 505 seeks to compensate the prevailing party for successfully vindicating its copyright claim. On the other hand, courts do not want chill legitimate advocacy by defendants. Brayton Purcell LLP v. Recordon & Recordon, 487 F. Supp. 2d 1124, 1129 (N.D. Cal. 2007).

Resolving these contrary objectives depends on a case's equitable circumstances. Twentieth Century Fox Film Corp. v. Streeter, 438 F. Supp. 2d 1065, 1074 (D. Az. 2006).

In this case, the Court finds that reducing the lodestar amount by 60% is justified when considering the equities. In this case, the jury found that Defendant had infringed on 11 out of 17 Brighton copyrights. Out of 51 designs, the jury found infringement on 39 designs. Although Brighton's degree of success was high, it did not prevail on all the copyrights and the designs. Moreover, the jury found that defendant did not willfully infringe Plaintiff's copyrights. Furthermore, the parties agreed that the jury's calculation of statutory damages award of $1,050,000 was incorrect and should have been $330,000. The fact that the jury awarded $1,000,000 in lost profits was a generous one that will promote deterrence and fully compensate Plaintiff for the alleged infringement. In addition to the $1,000,000, if the Court awarded an additional $646,575.75 to Plaintiff, such an award could frighten defendants from advancing a valid defense and force defendants to succumb to exorbitant settlement demands of a plaintiff. Accordingly, the Court finds it appropriate to reduce the lodestar by 60% to adjust for those equitable considerations.

Since filing its motion for attorney's fees, Brighton has expended $17,168.75 through July 2014 but it does not include additional work to perform in August 2014. The Court finds it appropriate to award Brighton the fees through July 2014.

Based on the above, the Court GRANTS in part Plaintiff's motion for attorneys' fee in the amount of **$275,799.05**. The calculation is as follow: the following amounts have been excluded from the total of $808,877.00 sought: $87,345.00 in paralegal fees; $13,593.75 for entries re: depositions of Fraser (sic), Lambert and Paret; and $78,531.25 for vague entries. After those exclusions, the amount totals $646,575.75. The Court then reduces $646,575.75 by 60% to get a total of $258,630.30. The Court also adds $17,168.75 for the fees expended through July 2014. Therefore, the total amount of attorneys' fees totals $275,799.05.

**C. Lodestar Adjustment**

Neither party has raised the issue that the lodestar should be adjusted upward or downward based on the Kerr factors. The Court concludes that this is not a rare and exceptional case supporting an adjustment and declines to adjust based on the Kerr factors. See Van Gerwen, 213 F.3d at 1045.

**Conclusion**

Based on the above, the Court GRANTS in part Brighton's motion for attorneys' fees in the amount of **$275,799.05**. The Court also GRANTS AIF's motion to file documents under seal. (Dkt. No. 443.)

IT IS SO ORDERED.

DATED: October 24, 2014

HON. GONZALO P. CURIEL
United States District Judge